James F. Clark, Alaska Bar #6907025
Law Office of James F. Clark
1109 C Street
Juneau, Alaska 99801
Tel: 907-586-0122
Fax: 907-586-1093
jfclarkiii@gmail.com

Steven W. Silver, Alaska Bar #7606089
Robertson, Monagle & Eastaugh
1810 Samuel Morse Drive, Suite 202
Reston, VA 20190
Tel: 703-527-4414
Fax: 703-527-0421
ssilver628@aol.com

Attorneys for Movants for Intervention as Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

**MOVANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOVANTS' MOTION TO INTERVENE
AS DEFENDANTS**

| | |
|---|---|
| ORGANIZED VILLAGE OF KAKE; ORGANIZED | ) |
| VILLAGE OF SAXMAN; HOONAH INDIAN | ) |
| ASSOCIATION; KETCHIKAN INDIAN COMMUNITY; | ) |
| KLAWOCK COOPERATIVE ASSOCIATION; | ) |
| WOMEN'S EARTH AND CLIMATE ACTION | ) |
| NETWORK; THE BOAT COMPANY; UNCRUISE; | ) |
| ALASKA LONGLINE FISHERMEN'S ASSOCIATION; | ) Case No. |
| SOUTHEAST ALASKA CONSERVATION COUNCIL; | ) 1-20-cv- |
| NATURAL RESOURCES DEFENSE COUNCIL; | ) 011 SLG |
| ALASKA RAINFOREST DEFENDERS; ALASKA | ) |
| WILDERNESS LEAGUE; SIERRA CLUB; DEFENDERS | ) |
| OF WILDLIFE; NATIONAL AUDUBON SOCIETY; | ) |
| CENTER FORBIOLOGICAL DIVERSITY; FRIENDS | ) |
| OF THE EARTH; THE WILDERNESS SOCIETY | ) |
| GREENPEACE, INC.; NATIONAL WILDLIFE | ) |

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 1 of 36

FEDERATION; and ENVIRONMENT AMERICA) )
**Plaintiffs,** )
v. )
THOMAS VILSACK, in his official capacity as )
Secretary of Agriculture, UNITED STATES )
DEPARTMENT OF AGRICULTURE, )
STEPHEN CENSKY, or his successor, in his )
official capacity as Deputy Secretary of )
Agriculture; and UNITED STATES FOREST )
SERVICE, )
**Defendants,** )
)
State of Alaska )
**Defendant- Intervenor** )
and )
GOVERNOR FRANK H. MURKOWSKI, )
THE CITY OF CRAIG (CRAIG), THE CITY )
OF KETCHIKAN, THE KETCHIKAN )
GATEWAY BOROUGH (KGB), SOUTHEAST )
STEVEDORING CORP. ALASKA ELECTRIC )
LIGHT & POWER COMPANY (AEL&P), )
ALASKA POWER & TELEPHONE (AP&T), )
ALASKA MARINE LINES, INC. (AML), )
THE ALASKA MINERS' ASSOCIATION )
(AMA), HYAK MINING CO., THE RESOURCE )
DEVELOPMENT COUNCIL OF ALASKA )
(RDC), THE ALASKA CHAMBER, THE )
JUNEAU CHAMBER OF COMMERCE, )
THE FIRST THINGS FIRST ALASKA )
FOUNDATION (FTF), TYLER RENTAL )
INC. (TYLER), FIRST BANK, TEMSCO )
HELICOPTERS, INC., SAMSON TUG )
AND BARGE COMPANY, INC., BOYER )
TOWING INC., COASTAL HELICOPTERS, )
INC., CONSTRUCTION MACHINERY )
INDUSTRIAL, LLC, GREATER KETCHIKAN )
CHAMBER OF COMMERCE AND )
SOUTHEAST CONFERENCE )
**Movants.** )
_____)

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*                    Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 2 of 36

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. Civ. P. 7.1 Movants inform the Court that: (1) Governor Frank H. Murkowski is a private individual, 2) the City of Craig (Craig), the City of Ketchikan, and the Ketchikan Gateway Borough (KGB) are municipal corporations organized under the laws of the State of Alaska and do not offer shares to the public; (3) the Resource Development Council for Alaska (RDC), the Alaska Chamber, the Juneau Chamber of Commerce (JCC), the Greater Ketchikan Chamber of Commerce, The First Things First Alaska Foundation (FTF), the Alaska Miners Association (AMA) , and Southeast Conference (SEC), are nonprofit corporations organized under the laws of the State of Alaska and do not offer shares to the public, and 4) Southeast Stevedoring Corp.(SSC), Alaska Electric Light & Power Company (AEL&P), Alaska Power & Telephone (AP&T), Alaska Marine Lines, Inc. (AML),, Hyak Mining Co., Tyler Rental Inc. (Tyler), First Bank, Temsco Helicopters, Inc., Samson Tug and Barge Company, Inc., Boyer Towing Inc., and Coastal Helicopters, Inc., are private corporations organized under state law and do not offer shares to the public. Alaska Power and Telephone is a private, Employee-owned corporation which does not offer shares to the public. Alaska Electric Light and Power Company is a wholly owned subsidiary of Avista Corporation which is a publicly traded

company listed on the New York Stove Exchange. No other Movant is an entity which offers shares to the public.

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*                    Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 4 of 36          ii

# TABLE OF CONTENTS

I.   INTRODUCTION ..............................................................................1

II.  STATEMENT OF FACTS..................................................................3

    a.  Background……………………………………………………..3

    b.  Movants' Interests in the Tongass Roadless Rule Exemption…5

III. DISCUSSION ................................................................... 20

A. MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT
    BECAUSE THEY HAVE AN INTEREST IN DEFENDING THE
    ROADLESS RULE THAT IS NOT ADEQUATELY
    REPRESENTED BY THE EXISTING PARTIES. ..................... 20

    1.  The Legal Standard ........................................................... 20

    2.  Movants Meet the Four Elements Requiredto Intervene by
        FRCP 24 (a)(2):…………………………………………...21

        a.  Movants' Application Is Timely...................................21
        b.  Movants Claim Significantly Protectable
            Interests Relating to the Remedies and Merits ..............22
            (i)   Communities have protectable interest for schools
                and roads......... …………………………………22
            (ii)  a Protectable Interest in a
                Healthy Economy ................................................. 23
        c.  Movants' Interests May be Impaired by the
            Disposition of this Action ............................................. 25
        d.  The Existing Parties Do Not Adequately Represent
            Movants' Interests.......................................................26

    3.  Movants Have Article III Standing.................................... 27

    B. IN THE ALTERNATIVE, APPLICANTS SHOULD
    BE ALLOWED PERMISSIVE INTERVENTION ......................... 28

IV.   CONCLUSION…………………………………………………..29

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*        Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 5 of 36    iii

# I.    INTRODUCTION.

In 2001 Alaska contested application of the 2001 Roadless Area Conservation Rule[1] to the National Forests in Alaska. The 2001 Roadless Rule prohibited or hindered access to Alaska's National Forests for the mining, renewable energy resources, and timber industries. It designated approximately 9.4 million acres of the Tongass National Forest (Tongass) as Inventoried Roadless Areas (IRAs). A 2003 Agreement with the United States Department of Agriculture (USDA) settled Alaska's litigation and resulted in rulemaking temporarily exempting the Tongass from the 2001 Roadless Rule. However, in 2011 the 2001 Roadless Rule was reimposed on the Tongass by the Alaska District Court for the District of Alaska finding a procedural problem with USDA's 2003 rulemaking.

In January 2018 then Alaska Governor, Bill Walker, petitioned USDA for an Alaska-specific Rule exempting the Tongass from the 2001 Rule. USDA reviewed six alternatives during the NEPA process and selected total

---

[1] (36 C.F.R. §§ 294.10-.14 (2001); 66 Fed. Reg. 3244, 3272-73 (Jan. 12, 2001) ("2001 Rule")).

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*                Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 6 of 36        1

exemption from the 2001 Rule.. The new Rule exempting the Tongass went into effect on October 29, 2020.[2]

Plaintiffs' Complaint challenges the Alaska-specific Rule exempting the Tongass from the 2001 Rule. Vacation of the Tongass Roadless Rule Exemption (¶ B of Prayer at page 49 of Complaint) would interfere with Movants' access to future renewable energy projects, mineral exploration and development projects, and timber sales, thereby preventing Movants from contributing to a diverse and robust economy, through direct and indirect jobs, and a solid tax base for Southeast Alaska municipalities. An injunction (¶ C of Prayer at page 49 of Complaint) or merits decision that sets aside the October 29, 2020 Rule (¶ A of Prayer at page 48 of Complaint) would have a similar direct, adverse effect on Movants and Southeast.

Movants seek to intervene to protect their interests and their members' and employees' interests in maintaining access to, and use of, the Tongass for mining, tourism, renewable energy, timber and other associated, dependent businesses. Movants also seek to protect their and their members' and employees' recreational interests as hikers, hunters, and fishers who would use roads for access to former IRAs.

---

[2] (36 C.F.R. § 294.50 - .51; 85 Fed. Reg. 68,688 to 68,703 (Oct. 29, 2020) ("Alaska-specific Rule" or "Tongass Exemption")),

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 7 of 36          2

Movants' Motion to Intervene is timely and their interest in maintaining the Tongass Exemption would be impaired by granting any of Plaintiffs' Prayers for Relief. The Federal Government does not adequately represent Movants in this action because the new Administration's support for the Tongass Exemption is uncertain. Alternatively, Movants should be granted permissive intervention.

## II.     STATEMENT OF FACTS.

**A.** Background.

The statement of Purpose and Need for the 2001 Roadless Rule was:

> At the national level, Forest Service officials have the responsibility to consider the "whole picture" regarding the management of the National Forest System, including inventoried roadless areas. … If management decisions for these areas were made on a case-by-case basis at a forest or regional level, inventoried roadless areas and their ecological characteristics and social values could be incrementally reduced through road construction and certain forms of timber harvest.[3]

The 2001 Rule included a separate Tongass decision, but its general statement of Purpose and Need did not explain why a "national level, whole picture" review of the Tongass was needed in addition to the two undertaken by Congress in the Alaska National Interest Lands Conservation Act (ANILCA) (16 U.S.C. § 3101 *et seq*) in 1980 and the Tongass Timber

---

[3] 66 Fed. Reg. *supra.,* at page 3246.

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 8 of 36          3

Reform Act (TTRA) (16 U.S.C. § 539d(a)) in 1990. In short, the USDA "national" "whole picture" review of the Tongass in the 2001 Rule was not supported by the statement of Purpose and Need.

Accordingly, then Alaska Governor, Tony Knowles, challenged application of the Rule to Alaska in 2001. (Exhibit A at ¶ 6). Alaska's litigation asserted that denying or hindering road access to 9.4 million acres of IRAs violated the "No More" clause (§ 1326 (a)) of ANILCA and deprived the Forest Service of its ability to seek to meet the market demand for timber required by (§ 101 (a)) of the TTRA. Finally, the State's litigation emphasized the adverse socioeconomic impacts of the Rule on Southeast.

Then Alaska Governor Frank H. Murkowski settled the State's litigation in 2003 based upon the commitment of USDA to engage in Tongass-specific rulemaking. (Exhibit A at ¶ 8). In December 2003 USDA agreed to temporarily exempt the Tongass from the Roadless Rule because "the roadless values on the Tongass are sufficiently protected under the Tongass Forest Plan and the additional restrictions associated with the roadless rule are not required." (Exhibit A at ¶¶ 8 and 9). The 2003 Regulation also stated:

> The Department has concluded that the social and economic hardships to Southeast Alaska outweigh the potential long-term ecological

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 9 of 36      4

benefits because the Tongass Forest plan adequately provides for the ecological sustainability of the Tongass.[4]

USDA's substantive *policy* determination has never been challenged or changed. However, in a 6 – 5 *en banc* decision in *Organized Village of Kake v. USDA*, 795 F.3d 965 (9th Cir. 2015) the Court held that the rulemaking *process* violated *F.C.C. v Fox Television Stations* 556 U.S. 502 (2009) and restored the 2001 Rule.

In January 2018 then Governor Walker requested that USDA initiate Alaska-specific rulemaking to again exempt the Tongass from the 2001 Rule. (Exhibit A at ¶ 13). USDA agreed and proceeded to rulemaking which ended on September 24, 2020. On October 29, 2020 USDA promulgated the new Rule exempting the Tongass.[5] On December 23, 2020 Plaintiffs filed their Complaint, the purpose of which is to reimpose the 2001 Rule to the Tongass..

**B. Movants' Interests in the Tongass Roadless Rule Exemption.**

Development of Southeast's transportation, renewable energy, mining, timber, and other resources produces stable communities – high paying mining, renewable energy, timber, and associated jobs, children in the schools and secondary employment in the community. (Exhibit W, at ¶

---

[4] 68 Fed. Reg. 75,136 Dec. 30, 2003.
[5] 85 Fed. Reg. 68,688 to 68,703 (Oct. 29, 2020).

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 10 of 36      5

2). For example, Rain Coast Data reports that in 2020 the timber industry provided 372 jobs and a payroll of $22.5 million. Mining provided 934 jobs and a payroll of $94.8 million.[6]

Such development generates secondary employment in Movants' businesses such as - road construction, sawmill jobs, marine transportation of goods, the rental of equipment in support of such projects and development arising out of associated road construction. (Exhibit W, at ¶ 2).

Each of the Movant local government and community associations, resource development associations, membership organizations, and businesses has citizens, members, employees and shareholders who live and work in the Tongass National Forest for business, recreational, and other purposes. They use, and require access to, the Tongass for economic and recreational purposes such as mining, timber harvest, construction of facilities needed to provide hydropower and other renewable energy opportunities to communities, and hiking, camping, and sport hunting, and fishing. (Exhibit W, at ¶¶ 2 – 4).

---

[6]Rain Coast Data. 2020 Southeast Alaska by the Numbers Report. Available at: http://www.seconference.org/southeast-alaska-numbers.

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*        Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 11 of 36        6

Each of the Movants' interests would be adversely affected by any injunctive relief or any settlement, affecting the October 29, 2020 Roadless Rule Exemption or a merits decision requiring USDA to reimpose the 2001 Rule.

In reviewing the following the Court should consider the socioeconomic interdependence of Southeast Alaska's businesses and communities.

1. GOVERNOR FRANK H. MURKOWSKI (Exhibit A) – Governor Murkowski was elected to the United States Senate in 1980. As a Senator when the Clinton Administration promulgated the Roadless Rule in January 2001, he encouraged then Governor Tony Knowles to challenge application of the 2001 Rule to the National Forests in Alaska because it violated ANILCA's "No More" Clause (§1326 (a)) and because the Rule's Purpose and Need was inconsistent with the two reviews of Roadless Areas in Alaska's National Forests undertaken by Congress in ANILCA and the TTRA. (Exhibit A at ¶ 6). After Murkowski became Governor Alaska settled the litigation with USDA in 2003 by temporarily exempting the Tongass from the 2001 Rule (Exhibit A at ¶ 8).

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 12 of 36          7

Governor Murkowski retains his interest in hunting and fishing in Tongass IRAs. As an older Alaskan access to such areas by road and other means is necessary for his enjoyment of them. (Exhibit A at ¶ 15).

2. THE SOUTHEAST CONFERENCE (Exhibit W) – The Southeast Conference is the state and federally designated regional economic development organization for Southeast Alaska. (Exhibit W at ¶ 1). Its mission is to "support activities that promote strong economies, healthy communities, and a quality environment in Southeast." (Exhibit W at ¶ 2). The Southeast Conference has "heavily participated throughout the 2001 Rule process, including the Alaska-specific Roadless Rule process. (Exhibit W at ¶ 6). The Southeast Conference was concerned that the Alaska-specific rulemaking process be balanced and inclusive. It found that "the process used by the State and Forest Service "was methodical, inclusive, by-the-book, and fair." (Exhibit W at ¶ 7). Accordingly, "the Southeast Conference strongly supports the October 29, 2020 Alaska-specific Roadless Rule process and the reasons that process provided for exempting the Tongass from the 2001 Rule." (Exhibit W at ¶ 19).

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*     Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 13 of 36     8

3. THE CITY OF CRAIG (Exhibit B) – The City of Craig is economically dependent on the Viking Lumber Company Mill (hereinafter "Viking") which provides direct and indirect jobs and revenue from timber development in former IRAs (Exhibit B at ¶ 13). Viking also supplies wood chips to the Craig wood heating project which are used to heat Craig's Elementary and Middle schools and Aquatic Center, thereby providing "greenhouse gas-neutral energy to public buildings." (Exhibit B at ¶¶ 14 - 17).

   As a political subdivision of the State the City is entitled to "twenty-five per centum of all moneys received during any fiscal year" from timber sales and other economic activity on the Tongass. *See* 16 U.S.C. § 500. (Exhibit B at ¶ 9). Craig will see a great loss of tax revenues and receipts from timber sales and other economic activity on the Tongass under 16 U.S.C. § 500 if the 2001 Rule is reimposed because it does not permit road construction in IRAs. (Exhibit B at ¶ 12).

   Accordingly, Craig would be severely impacted by reimposition of the 2001 Rule. (Exhibit B at ¶ 24).

4. THE CITY OF KETCHIKAN (Exhibit C) – Ketchikan Public Utilities (KPU), a wholly owned subsidiary/department of the

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 14 of 36      9

City of Ketchikan, provides power to Ketchikan. The continued supply of power to Ketchikan is dependent upon its ability to construct hydropower facilities in former IRAs. Doing so is impractical and uneconomical without the certainty of road access. (Exhibit C at ¶ 8). Further, the 2001 Rule's prohibition of access to geothermal sites constricts the range of renewable energy alternatives available to KPU. (Exhibit C at ¶ 9).

5. KETCHIKAN GATEWAY BOROUGH KGB) (Exhibit D) –

Under federal law, the State and its political subdivisions (including KGB) are entitled to "twenty-five per centum of all moneys received during any fiscal year" from timber sales and other economic activity on the Tongass. *See* 16 U.S.C. § 500 or the Secure Rural Schools and Community Self Determination Act of 2000 (Rural Schools Act). (This is fully explained at pages 11 – 15 of the State of Alaska's Memorandum in Support of Motion to Intervene which is incorporated by reference into Mayor Duran's Declaration). (Exhibit D at ¶ 3). If the 2001 Rule is reimposed KGB's receipts from economic activity in the re-established IRA's under 16 U.S.C. § 500 and the Secure Rural Schools Act will be reduced. (Exhibit D at ¶ 5).

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*        Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 15 of 36      10

KGB is dependent upon hydropower for energy and the timber and mining industries for direct and indirect jobs and tax revenue. KGB's ability to: a) prospect, explore for, and develop new mines and b) access hydro sites and other renewable energy project sites by road to transport the equipment needed to develop such mineral and hydro sites will be severely constrained, if not prohibited, by re-application of the 2001 Roadless Rule to the Tongass. (Exhibit D at ¶ 14).

6. SOUTHEAST STEVEDORING CORP. (Exhibit E) – Southeast Stevedoring performs ship loading services at port locations throughout Southeast Alaska for the renewable energy, mining and timber industries in Southeast Alaska. Reimposition of the Tongass Roadless Rule would adversely affect those businesses and thereby reduce the amount of business available to Southeast Stevedoring Corporation. (Exhibit E at ¶¶ 8 - 9).

7. ALASKA ELECTRIC LIGHT & POWER (AEL&P) (Exhibit F) – Juneau's electricity comes from hydropower. AEL&P also supplies interruptible hydropower to the Greens Creek Mine, where hundreds of Juneau citizens work, and to cruise ships while docking in Juneau. Reimposition of the 2001 Roadless Rule

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 16 of 36          11

would adversely affect AEL&P because the certainty of road access is needed to construct future hydropower facilities in former IRAs. (Exhibit F at ¶ 11).

8. ALASKA POWER & TELEPHONE (Exhibit G) – AP&T has supplied affordable, reliable electrical power and telecommunication services throughout rural Alaska for over 63 years. AP&T provides services within 21 Southeast communities, including on Prince of Wales Island. (Exhibit G at ¶ 3).

Due to the islanded status of AP&T's utility systems, there is a limited consumer base from which to support fixed utility system costs. When economic activity decreases and overall energy sales decrease, the total cost per kilowatt hour of energy required to support fixed costs increases. As load decreases due to a lack of or decrease in economic activity (both of which prompt outmigration), rates must rise. (Exhibit G at ¶ 6).

Because of the small size of the utility systems AP&T serves, the closure of a key business (and potential ripple effects within the supply chain) can have an adverse impact on energy sales, and by extension AP&T's financial performance, and consumer rates. The 2001 Rule has resulted in the closure of numerous

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 17 of 36   12

businesses. Its reimposition would threaten the closure of numerous others, which would harm AP&T. (Exhibit G, at ¶ 8).

9. ALASKA MARINE LINES, INC. (Exhibit H) – AML is a marine transportation company that carries varieties of freight to and from Southeast Alaska in support of the mining, timber, renewable energy, tourism, and fishing industries. (Exhibit H, at ¶¶ 2 - 4). With the high fixed costs of operating a barge line, high freight volume is key to an efficient operation. Commercial activity, particularly hydro power development, mining, fishing, and timber harvest, is essential to AML's ability to maintain affordable, frequent, and regular service to Southeast communities for other items such as groceries and other necessities of daily life, and materials for environmental remediation. (Exhibit H, at ¶ 5). Reimposition of the 2001 Roadless Rule on these businesses will adversely impact AML's ability to maintain affordable, frequent, and regular service to Southeast communities. (Exhibit H, at ¶ 7).

10. ALASKA MINERS' ASSOCIATION (AMA) (Exhibit I) – Mining exploration and development would be adversely impacted by the lack of certainty of road access and prohibition of

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*        Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 18 of 36        13

the cutting of trees in IRAs if the 2001 Rule is reimposed. (Exhibit I at ¶ 12).

11. HYAK MINING CO. INC. (HYAK) (Exhibit J) - The lack of certainty of road access and the inability to cut trees in IRAs would adversely impact Hyak's operations if the 2001 Rule is reimposed. (Exhibit J, at ¶ 13).

12. RESOURCE DEVELOPMENT COUNCIL FOR ALASKA (RDC) (Exhibit K) – RDC is an Alaskan business association comprised of individuals and companies from Alaska's oil and gas, mining, forest products, tourism, renewable energy and fisheries industries. RDC's purpose is to encourage a strong, diversified private sector in Alaska and expand the state's economic base through the responsible development of its natural resources. (Exhibit K, at ¶ 2). The October 29, 2020 Rule exempting the Tongass from the 2001 Roadless Rule provides an opportunity for the economy of Southeast to recover from the economic damage caused by the 2001 Rule. (Exhibit K, at ¶ 4).

13. ALASKA CHAMBER (Exhibit L) – The Alaska Chamber represents 100,000 Alaskan employees and businesses large and small. The mission of the Alaska Chamber is to grow and foster a

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*       Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 19 of 36       14

healthy and diverse economy in Alaska. The Chamber has a strong interest in maintaining the October 29, 2020 Alaska-specific Rule exempting the Tongass from the 2001 Rule because it provides the opportunity for the economy of Southeast to recover from the economic damage created by the 2001 Rule over the last 10 years (Exhibit L, at ¶ 4).

14. JUNEAU CHAMBER OF COMMERCE (Exhibit M) - is a member organization representing just under 400 businesses in Juneau. The Juneau Chamber supports programs based on the proposition that tourism, fishing, mining, and a renewed timber industry can coexist to the benefit of all in the region. There would be adverse impacts on the Juneau Chamber and its members in the mining, timber, and renewable resource industries and the recreational interests of all its members were the 2001 Rule reimposed. (Exhibit M, at ¶¶ 5 - 7).

15. FIRST THINGS FIRST FOUNDATION (FTF) (Exhibit N) -- FTF members engage in natural resource development activities and natural resource related jobs on the Tongass. (Exhibit N at ¶ 2). The FTF would be harmed by the inability of the State and private industry to have access to, and develop, the abundant

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 20 of 36        15

Tongass renewable energy and other natural resources if the 2001 Rule were reinstated. (Exhibit N at ¶ 6 - 8).

16. TYLER RENTAL INC. (Exhibit O) - Tyler Rental Inc. is a full line rental equipment company serving the Southeast construction, timber, maritime and mining industries. Tyler Rental operates throughout Southeast including Ketchikan, Petersburg, Craig, Sitka, and Juneau. It employs 80 people in Southeast with a payroll of $5,174, 736 in 2020. (Exhibit O at ¶ 2). Commercial activity arising out of timber harvest, hydro power development, mining exploration, and development and fishing is essential to Tyler's ability to maintain affordable rental equipment for Southeast's communities. Tyler will be harmed by the loss of commercial business activity that will result from a substantial delay or vacation of the October 29, 2020 Alaska-specific Rule exempting the Tongass. (Exhibit O at ¶¶ 6 - 7).

17. FIRST BANK (Exhibit P) – First Bank's financial well-being depends upon a healthy economy in Southeast. First Bank has business relationships with many of the Movants. Accordingly, First Bank's business interests will be harmed by the adverse

impacts on its customers if the 2001 Rule is reimposed. (Exhibit P at ¶ 14).

18. TEMSCO HELICOPTERS, INC. (Exhibit Q) - Temsco flies numerous items and personnel within Southeast in support of the mining, timber, energy, tourism, and fishing industries. The adverse impact of reimposition of the 2001 Rule on these businesses will adversely impact Temsco's ability to maintain affordable, frequent, and regular service to Southeast communities. (Exhibit Q at ¶¶ 7 - 8).

19. SAMSON TUG AND BARGE (Exhibit R) – Samson Tug and Barge is a family-owned business that carries multi-kinds of freight, and general consumer goods, to and from Southeast year-round in support of the timber, mining, renewable energy, and fishing industries. Because of the high costs of operating a barge line, high volume is key to efficient operation. The adverse impact of reimposition of the 2001 Rule on its customers will adversely impact Samson's ability to maintain affordable, frequent, and regular service to Southeast communities. (Exhibit R, at ¶¶ 5 - 7).

20. BOYER TOWING INC - (BTI) (Exhibit S). is a marine transportation company that carries freight to and from Southeast

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*        Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 22 of 36      17

in year-round support of its mining, timber, energy, tourism, and fishing industries. BTI also delivers the necessities and commodities of everyday life. Commercial activity, particularly timber harvest, hydropower development, mining, fishing, and tourism, is essential to BTI's ability to maintain affordable, frequent, and regular service to Southeast communities. (Exhibit S, at ¶ 4).

21. COASTAL HELICOPTERS (Exhibit T) – Coastal Helicopters flies cargo and personnel in support of Southeast's mining, timber, energy, tourism, and fishing industries. The adverse impact of reimposition of the 2001 Rule on these businesses will adversely impact Coastal's ability to maintain affordable, frequent, and regular service to Southeast communities. (Exhibit T, at ¶¶ 7,9, and 10).

22. CONSTRUCTION MACHINERY INDUSTRIAL, LLC (Exhibit U) – CMI is a full-line equipment company serving the construction, forest, maritime and mining industries in Alaska. CMI's business would be adversely impacted by the adverse impacts on its customers if the 2001 Roadless Rule were reimposed. (Exhibit U, at ¶¶ 7 - 8).

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 23 of 36      18

23. GREATER KETCHIKAN CHAMBER OF COMMERCE (EXHIBIT V) – The Ketchikan Chamber represents businesses engaged in the Ketchikan area's timber, mining, fishing and tourism industries. The 2001 Rule was a barrier to access to needed resources by the Chamber's members' businesses. (Exhibit V, at ¶ 5). There would be adverse impacts on the Ketchikan Chamber and its resource industries members and on the recreational interests of its members were the 2001 Rule to be reimposed. (Exhibit V, at ¶¶ 6 - 7).

**C.    Procedural Posture of The Case at Intervention.**

Plaintiffs filed their Complaint on December 23, 2020. The Complaint alleges: 1) (Count I) ANILCA (failure to follow ANILCA § 810 subsistence procedure); 2) (Count II) Administrative Procedures Act 5 U.S.C. § 706 *et seq* (APA) (decision to exempt Tongass inconsistent with, not supported by, and contradictory of the record); and 3) (Count III) the National Environmental Policy Act (NEPA) (failure to consider a reasonable range of alternatives).

Federal Defendants have not filed their Answer or the record. On February 23, 2021 they requested a 120 day stay "to allow the Department of Agriculture time to review the Alaska Roadless Rule that is being

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 24 of 36      19

challenged." On February 25 the Court ordered a 120 day stay "except the stay does not extend to any motions to intervene filed during the stay and the Court may rule on such motions during the stay." (Doc. No. 17 Order at 1).

## III. DISCUSSION

### A. MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT

#### 1. The Legal Standard

FRCP 24 (a)(2) requires that, upon timely motion, the Court permit an applicant to intervene as of right who satisfies four elements: 1) files timely motion; 2) has a cognizable interest; 3) disposition of the action may impair the applicant's ability to protect that interest; and 4) lack of adequate representation by existing parties. *Wilderness Soc. V. U.S. Forest Service*, 630 F.3d 1173, 1177 (9th Cir. 2011) Even if the test for intervention as of right cannot be satisfied, the Court has the discretion under FRCP 24(b)(2) to permit Movants to intervene as long as Plaintiffs' action and Movants' defense share common questions of law and the application is timely.

Because a liberal policy in favor of intervention encourages both efficient resolutions and broadened access to the courts, when evaluating whether the requirements of Rule 24(a)(2) are met, a court normally follows "practical and equitable considerations" and construes the rule "broadly in favor of proposed intervenors." *United States v. City of Los Angeles*, 288 F.3d 391,

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 25 of 36          20

397-98 (9th Cir. 2002). Generally, a prospective intervenor's interests qualify as "significantly protectable" if the interest is protectable under some law and a relationship exists between the legally protected interest and the claims at issue. *Sierra Club v. EPA,* 995 F.2d 1478, 1484 (9th Cir. 1993). In all other cases, such an interest is demonstrated if it will suffer a practical impairment from the pending litigation. *California ex rel. Lockyer v. United States,* 450 F.3d 436, 441 (9th Cir. 2006). Movants satisfy all of these requirements and thus request intervention as of right.

## 2. Movants Meet the Four Elements Required to Intervene Established by FRCP 24 (a)(2):

### a. Application is timely.

Timeliness depends upon the stage of the proceedings, potential prejudice to the parties, and the reason for any delay. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996) (finding application to intervene timely when filed before any substantive rulings had been made).

Plaintiffs filed their Complaint on December 23, 2020. Federal Defendants have asked for a stay and have not yet filed their Answer or the administrative record. So, the case is stayed in the pleadings stage. *See Friends of Animals v. Kempthorne,* 452 F.Supp.2d 64, 66-67 (D.D.C. 2006) (motion to intervene timely where case still in pleadings stage). There is thus

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*    Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 26 of 36    21

no prejudice to existing parties from granting the requested intervention. *Fund for Animals v. Norton,* 322 F.3d 728, 735 (D.C. Cir. 2003) (motion for intervention timely when filed prior to answer). Because of the absence of prejudice to any party, this motion "cannot be regarded as untimely." *Akiachak Native Community v. Department of Interior,* 584 F.Supp.2d 1 (D.D.C. 2008).

### b. Movants claim significantly protectable interests relating to the remedies and the merits.

To intervene as of right at the trial level

> a prospective intervenor must establish that (1) "the interest [asserted] is protectable under some law," and (2) there is a relationship between the legally protected interest and the claims at issue.

*Northwest Forest Resource Council*, 82 F.3d at 837. *Didrickson v. United States Department of the Interior,* 982 F.2d 1332, 1340 (9th Cir. 1992).

### (i) Movants have a protectable interest in the continued flow of timber from the Tongass because it provides critical funding to the Cities of Craig and Ketchikan, KGB, and other Southeast Alaska communities for schools and roads.

Under federal law, the State is entitled to "twenty-five per centum of all moneys received during any fiscal year" from timber sales and other economic activity on the Tongass. *See* 16 U.S.C. § 500. Tongass timber sales contribute significantly to the millions of dollars in these "National

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 27 of 36      22

Forest Receipts" paid to the State. As a political subdivision of the State, the City of Craig and the KGB and other communities of Southeast Alaska are entitled to a portion of those receipts. (Exhibit D at ¶¶ 3 - 5).

There is thus a distinct relationship between these Movants' interests and the declaratory relief (¶ B of Prayer at page 49 of Complaint) and injunctive relief (¶ C of Prayer at page 49 of Complaint) sought by Plaintiffs:

> [W]hen, as here, the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the "interest" test of Fed. R. Civ. P. 24(a)(2); [it] has a significantly protectable interest that relates to the property or transaction that is the subject of the action. *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489,1494 (9th Cir.1995)..

In *Forest Conservation Council*, Arizona's right to intervene was predicated in part on that state's protected rights to timber sale proceeds, including receipts for schools and roads under 16 U.S.C. § 500. *See* 66 F.3d at 1492 & 1496. This Court found these facts to be sufficient to provide standing in *Organized Village of Kake,* 795 F.3d at 963 - 966. For the same reason the State of Alaska, and its political subdivisions – Craig, KGB, and other Southeast communities are entitled to intervene.

### (ii) Movants have other protectable interests in a healthy economy.

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*        Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 28 of 36      23

This Court observed in *Organized Village of Kake,* 795 F.3d at 960, n.1 that "[t]he Tongass is vitally important to the economy of Southeast Alaska; it supports significant timber and mining activity as well as commercial and recreational fishing, hunting, recreation, and tourism." The virtually certain economic losses to Movants (set out in their Declarations) if the October 29, 2020 Tongass Exemption from the 2001 Rule is enjoined or vacated strongly justifies intervention. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 135-136 (1967), *vacated on other grounds sub nom. Utah Public Services Comm'n v. El Paso Natural Gas Co.,* 395 U.S. 464 (1969) (economic loss from implementation of proposed consent decree warrants intervention). *See Kleissler v. U.S. Forest Service,* 157 F.3d 964, 973 (3d Cir. 1998) (intervenors' interest in *future* business operations is "substantial interest, directly related to, and threatened by" regulation challenging those operations, and "meets the requirements of Rule 24(a)"); *See also Akiachak Native Community v. Salazar,* 584 F. Supp. 2d 1, at 6-7 (interest test to be liberally construed).

As in *Kleissler,* most of the Movants have done work, or have members or citizens who work in Southeast Alaska which would be adversely impacted if the October 29, 2020 Tongass Exemption from the 2001 Rule is enjoined or vacated. (Exhibit W, at ¶ 5). As in *Kleissler*

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*      Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 29 of 36      24

Movants have a sufficient interest in the litigation to support intervention as of right. *See also Wilderness Society*, 630 F.3d at 1179 and *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

In conclusion, because Movants' Declarations show economic interests that are "concrete and related to the underlying subject matter of the action" they are entitled to intervention as of right. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

### c. The disposition of this action may impair the Movants' ability to protect their interests.

A movant has sufficient interest to intervene if it will suffer practical impairment of its ability to protect its interests if intervention is not allowed. *See Forest Conservation Council,* 66 F.3d at 1498 and *Wilderness Society*, 630 F.3d at 1178 (quoting *Lockyer,* 450 F.3d at 441).

Plaintiffs here seek to set aside, vacate or enjoin[7] the October 29, 2020 exemption from the 2001 Rule. In *Organized Village of Kake* 795 F.3d at 960 this Court recognized that "adopting the Roadless Rule risked significant and negative local economic impacts for the Tongass." Because a movant must be made a party to the action to ensure that it has a legal means to challenge such negative impacts (*Forest Conservation Council,* 66 F.3d at

---

[7] Prayers for Relief A, B, and C, Complaint at 49.

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 30 of 36      25

1498), and because reimposition of the 2001 Rule would have the same adverse impacts on Movants' as the "significant and negative local economic impacts" the Ninth Circuit recognized in *Kake,* it follows that Movants are "so situated that disposition of the action may *as a practical matter* impair or impede their ability to protect their interest." FRCP 24(a) (2) (emphasis added). Therefore, this prong of FRCP 24 (a)(2) is met.

### d. Movants' interests may not be adequately represented by the federal defendants.

A movant for intervention need only show that representation by the present parties ***may*** be inadequate. *Northwest Forest Resource Council*, 82 F.3d at 838 (following *Trbovich v. United Mine Workers*, 404 U.S. 528, 583 n.10 (1972)).

The Ninth Circuit has recognized that "[t]he Forest Service is not charged with a duty to represent [state and local] interests in defending against the issuance of an injunction." *Forest Conservation Council*, 66 F.3d at 1499. Instead, it must represent broad public interests and present a "broader view than the more narrow, parochial interests of [a state and its political subdivisions]." *Id*. Moreover, the Federal Defendants are not in a good position to provide factual information and declarations on the harms to Movants from a proposed injunction needed to perform the required

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 31 of 36      26

balancing of the hardships. Thus, the Federal Defendants cannot be expected to make all of the arguments Movants would make.

Finally, the extent to which Federal Defendants will defend this case is uncertain.

Such differences in interests between Movants and Federal Defendants warrant intervention of right. *Trbovich, supra., at 539; Kiessler,* 157 F.3d at 973-974.

### 3. Movants Have Article III Standing

Movants have standing: a) Injury in Fact: As averred in their attached Declarations, and as recognized by this Court in *Organized Village of Kake*, 795 F.3d. at 960, the reimposition of the 2001 Rule on the Tongass will harm each Movant, its citizens and members by either prohibiting its proposed and current business developments or by making them more difficult;[8] b) Causation: The barriers to access to timber, mineral, and hydropower resources within IRAs caused by the 2001 Rule creates standing based upon Movants', "their citizens", and their members" affected business

---

[8] "Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads*, 788 F.3d at 317." *Red Lake Band Indians v. U.S. Army Corps of Eng'rs*, Civil Action No. 20-3817 (CKK), at *4 (D.D.C. Jan. 9, 2021)

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*      Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 32 of 36      27

interests. *See, e.g., County of San Miguel v. MacDonald,* 244 F.R.D. 36,

445-45 (D.D.C. 2007); c) Redressability: These injuries will be redressed by

a favorable ruling from the Court denying Plaintiffs' Complaint. Courts

routinely hold that industry has standing in cases challenging regulations

that affect its ability to operate. *National Coal Ass'n v. Lujan,* 979 F.2d

1548, 1551-1552 (D.C. Cir. 1992) (R. Ginsburg, J.)

## B. ALTERNATIVELY, MOVANTS SHOULD BE GRANTED PERMISSIVE INTERVENTION FOR ALL PURPOSES.

If the Court denies Movants' motion for intervention as of right,

Movants should be granted permissive intervention under Rule 24 (b). The

Ninth Circuit has "held that a court may grant permissive intervention where

the applicant for intervention shows (1) independent grounds for

jurisdiction; (2) the motion is timely; and (3) the applicant's claim or

defense, and the main action, have a question of law or a question of fact in

common." *Northwest Forest Resource Council*, 82 F.3d at 839.

As described above, this motion is timely and will not prejudice the

rights of existing parties. Additionally, Movants' defenses share

substantially the same questions of law and fact with the main action. As the

attached Declarations attest, Movants' interests in the subject matter of this

action will be substantially impaired if Plaintiffs prevail. Because Movants

will represent interests in this litigation that may not otherwise be advanced

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*        Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 33 of 36        28

by the parties, Movants' participation will contribute to an equitable resolution of this dispute.

Accordingly, permissive intervention should be granted if intervention as of right is not.

## CONCLUSION

For the foregoing reasons, the Court should grant Movants' motion to intervene.

Respectfully submitted this 22nd day of March, 2021.

/s/ Steven W. Silver
Steven W. Silver
Alaska Bar No. 7606089
Robertson, Monagle, and Eastaugh, PC
1810 Samuel Morse Drive Suite 202
Reston, VA 20191
703.527.4414 (office)
703.313.1793 (fax)
ssilver628@aol.com

/s/ James F. Clark
James F. Clark
Alaska Bar No. 6907025
Law Offices of James F. Clark
1109 C Street
Juneau, Alaska 99801
907.586.0122 (office)
907.586.1035 (fax)
jfclarkiii@gmail.com

*Attorneys for Movants*

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 34 of 36      29

## CERTIFICATE OF COMPLIANCE WITH ALASKA FEDERAL DISTRICT COURT LOCAL RULE 7.4(a)(2)

*OVK et al. v. USDA et al.* Case No. 1-20-cv-011 SLG

Pursuant to Alaska Federal District Court Local Rule 7.4 (a)(3) the undersigned attorney certifies that:

1. This Memorandum in Support of Motion to Intervene contains <u>5475</u> words and thus complies with the word limitation of Local Rule 7.4 (a)(2) excluding the parts of the Memorandum exempted by Local Rule 7.4 (a)(4).

2. This brief complies with the type face volume of and the type style requirements of Local Rule 7.5.

Signature: <u>/s/ James F. Clark</u>        Date: March 22, 2021
James F. Clark,
Alaska Bar #6907025
Law Office of James F. Clark
1109 C Street
Juneau, Alaska 99801
Tel: 907-586-0122
Fax: 907-586-1093
jfclarkiii@gmail.com

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*    Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 35 of 36   30

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March 2021 I caused to be electronically filed with the Clerk of the Court for the United States District Court for the District of Alaska the foregoing Movants' Motion to Intervene As Defendants, Movants' Memorandum Of Points And Authorities In Support of Motion to Intervene as Defendants; with Attached

- Exhibits A - W
- [Proposed] Answer;
- [Proposed] Order
  And
- Corporate Disclosure Statement

using the CM/ECF system.

Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

*s/* Steven Silver
Steven Silver

MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
*OVK et al. v. USDA et al.*          Case No. 1-20-cv-011 SLG
Case 1:20-cv-00011-SLG   Document 22-2   Filed 03/23/21   Page 36 of 36      31